

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00559-CR

---

RODERICK SHERROD JOHNSON                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In a single point, Appellant Roderick Sherrod Johnson appeals the denial of his postconviction request for forensic DNA testing. We will affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 2002, a jury convicted Williams of aggravated robbery with a deadly weapon, a knife, and found the deadly weapon allegation to be true. The

---

[1]*See* Tex. R. App. P. 47.4.

trial court assessed his punishment at life imprisonment. On April 3, 2003, this court affirmed his conviction. *See Johnson v. State*, No. 02-02-00301-CR, 2003 WL 1784518, at *2 (Tex. App.—Fort Worth Apr. 3, 2003, pet. ref'd) (mem. op., not designated for publication). In our opinion, we set forth the following facts:

> On April 28, 2000, Muhammad Moosa was working at a convenience store in Arlington. Approximately fifteen minutes before the 10:00 p.m. closing time, a person entered the store, grabbed him, and put a knife to his neck. No other customers were in the store at that time. After forcing Moosa to open the cash register, the assailant took the money out of it, stabbed Moosa, cutting his throat, head, and stomach, and left the store. When police arrived, Moosa was covered in blood and was in shock, but he was still alive.

> After a detective found [Johnson]'s fingerprints on the counter, he created a photographic lineup that included [Johnson]'s photo. On May 1, 2000, Moosa identified [Johnson] from the lineup in a solid, certain manner. Moosa also identified [Johnson] at trial as the assailant.

> Other evidence was presented at trial. Moosa testified that [Johnson] had been in the store on other occasions, and he recognized [Johnson] as a past customer. Crime scene technicians determined that the location and position of [Johnson]'s fingerprints indicated that he had most likely made the prints while standing behind the counter in the clerk's area. Moosa testified that, except for during the robbery, he had never allowed [Johnson] behind the counter in the clerk's area.

> [Johnson] lived almost directly behind the store. [Johnson]'s aunt, Audrey Malone, testified that he had been wearing two plain, white t-shirts that night when she sent him to the store just before 10:00 p.m. to get change for a twenty-dollar bill. Malone said that when [Johnson] returned six or seven minutes later, he said the store was already closed, he was still wearing the t-shirts, and he did not appear to have been involved in any type of struggle.

> Several days after the incident, one of [Johnson]'s neighbors discovered a broken knife and a bloody, plain white t-shirt in a dumpster located a short distance from the store. Police determined

2

that the blood on the knife and t-shirt was Moosa's. Although recovering DNA from sweat or skin cells inside the shirt is a possible method for determining who had worn the shirt, no other DNA was found on it. The record does not reflect if any DNA besides Moosa's was found on the knife. A fence was located near the dumpster, and the fence had a hole in it that ran between [Johnson]'s home and the store. Residents of the neighborhood used the hole as a shortcut to the store.

Several defense witnesses testified that [Johnson] traveled to Mississippi on April 29, 2000 to attend his grandmother's funeral. [Johnson] returned on May 2, 2000. [Johnson]'s girlfriend, who was with him when he was arrested on May 2, testified that he was shocked at being arrested.

*Id.* at *1.

On August 21, 2009, Johnson filed a motion for appointment of counsel for DNA testing. On September 17, 2010, after an attorney was appointed to represent him, Johnson filed his request for DNA testing of the t-shirt, the knife, and some loose hair found on the t-shirt. The State filed a response and proposed findings of fact and conclusions of law. On November 29, 2010, without a hearing, the trial court adopted the State's proposed findings and conclusions and denied Johnson's request for DNA testing.

Regarding DNA testing of the t-shirt—which is the only complaint Johnson raises on appeal—the trial court found that the t-shirt was subjected to Short Tandem Repeat ("STR") DNA testing, that no STR DNA profiles were found on the armpits or back of the neck of the t-shirt, and that the DNA profile obtained from the blood stain on the t-shirt matched Moosa's DNA profile. The trial court concluded that "[t]here is no reasonable likelihood that any current DNA testing

3

technique would provide a more accurate or probative result" and that Johnson has failed to meet the requirements of article 64.01 for new forensic DNA testing.

### III. DNA TESTING UNDER CHAPTER 64

A convicted person who moves for postconviction DNA testing bears the burden of satisfying the requirements of chapter 64 of the code of criminal procedure. *See Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006). Article 64.01(a) provides for forensic DNA testing of "evidence containing biological material." *See* Tex. Code Crim. Proc. Ann. art. 64.01(a) (West Supp. 2010). A convicted person may seek postconviction DNA testing of evidence that was "not previously subject to DNA testing," *id.* art. 64.01(b)(1), or evidence that was previously subjected to testing but can be tested with newer testing techniques, *id.* art. 64.01(b)(2).

Different burdens exist, depending on whether evidentiary materials have been previously tested for DNA. *Swearingen v. State*, 303 S.W.3d 728, 731 (Tex. Crim. App. 2010). However, for a convicted person to be entitled to postconviction DNA testing under either scenario, he must first establish that the evidence he seeks to be tested contains biological material. *Id.* at 732 ("A literal reading of the statute unequivocally mandates that all evidence to be tested must first be proven to contain biological material."). A mere assertion or a general claim that the existence of biological material is probable will fail to satisfy the convicted person's burden. *Id.* (citing *Routier v. State*, 273 S.W.3d 241, 256 (Tex. Crim. App. 2008)).

The Texas Court of Criminal Appeals has interpreted the phrase "evidence containing biological material" to mean the individual samples of biological material, even if taken from the same physical object or source. *Routier*, 273 S.W.3d at 247–48 (providing example that if a convicted person seeks to test multiple blood stains on a shirt, the term "evidence containing biological material" is deemed to be the individual blood stains on the shirt, not the shirt itself).

When, as here, the trial court denies a motion for postconviction DNA testing without conducting a hearing, we review the ruling de novo. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

## IV. No Error in Denial of Motion for DNA Testing

Here, Johnson argues on appeal that, although the blood stain, the armpit, and the back of the neck of the t-shirt were subjected to DNA testing, "the remaining areas [of the t-shirt] could yield additional profiles not related to Moosa or [Johnson]." Thus, he seeks DNA testing of evidence (the remaining areas of the t-shirt) that was not previously subject to DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01(b)(1); *Routier*, 273 S.W.3d at 247–48.

However, Johnson does not point to any area of the t-shirt not previously subject to DNA testing that contains biological material; he simply seeks to have the remainder of the t-shirt tested. Other than the blood stain, which matched Moosa's DNA profile, the areas of the t-shirt that were tested—the neck and the armpits—revealed no STR DNA profiles. Johnson has failed to provide any facts to suggest that DNA testing of the remainder of the t-shirt would yield any

different results.  His mere assertion that DNA testing of the remaining areas "could yield" additional DNA profiles fails to meet the threshold burden of proving that the evidence contains biological material.  *See Swearingen*, 303 S.W.3d at 733 (explaining that appellant's "proof" of biological material rests on conclusory statements and general claims).  Consequently, we hold that the trial court did not err by denying Johnson's postconviction motion for DNA testing, and we overrule his sole point.  *See* Tex. Code Crim. Proc. Ann. art. 64.01(a); *Swearingen*, 303 S.W.3d at 733; *Routier*, 273 S.W.3d at 247–48.

## V. CONCLUSION

Having overruled Johnson's sole point, we affirm the trial court's order denying DNA testing.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 11, 2011

6